(C. D. 979)

HANNEL & BENNET *v.* UNITED STATES

United States Customs Court, First Division

(Decided February 6, 1946)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Robert C. O'Grady* and *John J. McDermott*, special attorneys), for the defendant.

Before OLIVER, COLE, and MOLLISON, Judges

MOLLISON, Judge: The plaintiff in this case imported into the United States certain fur not on the skin which was entered as "waste, not specially provided for" subject to duty at the rate of 7½ per centum ad valorem under the provisions of paragraph 1555 of the Tariff Act of 1930, as modified by the Canadian Trade Agreement, T. D. 49752. The merchandise was assessed with duty by the collector at the rate of 27½ per centum ad valorem under the provisions of paragraph 1520 of the same act, as modified by the Belgian Trade Agreement, T. D. 47600, reading as follows:

Hatters' furs, or furs not on the skin, prepared for hatters' use, including fur skins carroted.

Various claims are made in the protest for free entry or for duty at rates lower than that assessed, but reliance is placed by the plaintiff chiefly in the claim that the merchandise is properly classifiable as waste under paragraph 1555, as amended, *supra*.

The record shows that the merchandise is what is known in the hatters' fur trade as "greasy" or "greasy fur," and consists of fur containing grease and "dags," or matted pieces of fur. It was produced in the following manner: Rabbitskins were subjected to a chemical treatment called "carroting" to improve their felting property, after which the fur was cut from the skins by a machine. As it emerged from the machine the fur was sorted by workers, the so-called "greasy" being segregated from the remainder of the fur.

The record is not clear whether the latter is ready for use at this point, without further processing, as part of the "mix" to be felted. From the testimony of the proprietor of the plaintiff firm, it would appear that the fur remaining after the separation of the "greasy" is then ready to be mixed with other grades and kinds of fur. The mixture or "mix" is then "blown," i. e., put through a blowing machine in which hair, pieces of skin, dirt, etc., are separated from the mixed fur. Following this process the "mix" is put through a felting machine and made into hats.

To come back to the situation at the time of segregation of the "greasy" from the fur, one of defendant's witnesses testified that all fur is blown before being used as hatters' fur. There is no doubt, however, that the "greasy" must be blown before being added to the "mix," and in the blowing process some of the grease and "dags" contained therein are taken out, and the resultant product is used in the "mix" as a cheaper and inferior grade of hatters' fur.

Plaintiff contends that the "greasy" is neither hatters' fur, nor fur prepared for hatters' use, nor fur skins carroted, but is a byproduct of the process of making hatters' fur, fit only for remanufacture into

hatters' fur, and as such is waste. It is clear that the "greasy" cannot be added to the "mix" in its condition as imported, and that it requires further processing before it is suitable for such use. However, we do not consider these facts as taking it out of the category of hatters' fur and establishing its character as waste.

The merchandise at bar is not a byproduct of the manufacture of hatters' fur in the sense of being different in character from the principal product. The difference here seems to be only in quality, and, indeed, both of defendant's witnesses stated that in the hatters' fur trade "greasy" is considered as an inferior grade of hatters' fur.

The situation here is very like that which obtained in the case of *Latimer* v. *United States*, 223 U. S. 501, 56 L. ed. 526. There, small pieces broken from the brittle leaves of tobacco which fell to the floor of a warehouse or factory during the process of manufacturing and handling tobacco were recovered, cleaned, and used in the manufacture of a cheap grade of cigarettes and stogies. The issue was whether such merchandise was dutiable as tobacco or as waste, and in concluding that it was properly classified as tobacco the court held that the term "waste" refers—

* * * to remnants and by-products of small value that have not the quality or utility either of the finished product or of the raw material.

The segregation of the "greasy" from the other cut fur did not take away from the former its utility as hatters' fur, and the fact that a relatively simple process, viz, blowing, which may be considered to be analogous to cleaning, was necessary in order to permit its use in making hats, would not derogate from its character as hatters' fur.

In the brief filed on behalf of the plaintiff there are cited the cases of *F. L. Kraemer & Co.* v. *United States*, Abstract 41389, 2 Cust. Ct. 716; *Danbury & Bethel Fur Co.* v. *United States*, Abstract 47262, 8 Cust. Ct. 541; *United States* v. *Hatters' Fur Exchange*, T. D. 27971, 13 Treas. Dec. 309; and *Chapal Frères & Co.* v. *United States*, T. D. 28102 (G. A. 6577), 13 id. 496, in each of which certain fur waste was held to be dutiable as waste. None of the merchandise in those cases was the same as or similar to the merchandise here involved, and the principles of decision enunciated therein have no application to the situation in the case at bar.

We are therefore of the opinion that the merchandise was correctly classified by the collector, and, finding all the claims made in the protest to be untenable, they are overruled. Judgment will issue accordingly.